### MECHANICS' BANK vs. LEVY & WOLFE.

The complainant may call for an answer on oath not only to the main charges in the bill, upon which his claim to relief is founded, but also as to matters of evidence and collateral facts, stated in the bill, which are material in establishing the main charges, or in ascertaining the nature or kind of relief to which he is entitled.

The defendant is not bound to answer an interrogatory unless the same is founded upon some allegation or charge in the bill. It is sufficient, however, if the interrogatory is founded upon a statement in the bill which is inserted therein merely as evidence in support of the main charges.

Where a person obtains money from a bank, by an improper and fraudulent overdrawing of his account, and the money thus obtained is placed in the hands of a third person, who has notice of the fraud before he parts with the money, or pays any valuable consideration therefor, the latter cannot retain the money against the just claim of the bank.

Where a fact is stated in the bill by way of recital merely, without any interrogatory calling for an answer as to that fact, the defendant is not bound either to admit or deny the same.

If the defendant admits the main fact charged in the bill, it is unnecessary for him to answer as to other matters which are merely stated as evidence of that fact.

October 22.     THIS cause came before the chancellor on appeal by the defendants from the decision of the vice chancellor of the first circuit, overruling their exceptions to the master's report on exceptions to their several answers. The bill was filed by judgment creditors of the defendant Levy, after the return of their execution at law against him unsatisfied. The bill alleged, among other things, that the defendant Levy obtained monies from the complainants' bank fraudulently, and by collusion between him and the defendant Wolfe, who was his

son-in-law, by overdrawing his account; and charged that Wolfe received the money thus obtained from the bank, and still had the same, or a very large amount thereof, in his possession. The bill also charged that after Levy had so overdrawn his account with the complainants he petitioned for the benefit of the insolvent law. That the granting of his discharge was opposed; and upon that occasion both of the defendants in this suit were sworn and examined. That from such examination it appeared Levy had knowingly and fraudulently overdrawn his account with the complainants, for the purpose of placing the monies thus obtained in the hands of Wolfe; that the monies were placed in his hands accordingly, and he knew at the time that they had been obtained by such overdrawing; and that those monies, or the greater part thereof, were in the hands of Wolfe at the time of such examination. The exceptions which were sustained by the vice chancellor, related principally to the neglect of the defendants to answer interrogatories founded upon the specific allegations in the bill as to what appeared from the examination of the defendants on that occasion.

*H. W. Warner*, for the complainants.

*J. L. Wendell*, for the defendants.

THE CHANCELLOR. Before going into the examination of the several exceptions particularly, it may be proper to notice a general objection, by the defendants' counsel, which is supposed by him to apply to the whole. It is said there are no charges in the bill to sustain the interrogatories upon which the exceptions are based; and therefore that the defendants were not bound to answer the matters enquired of by such interrogatories. The counsel is undoubtedly correct in the principle that a defendant cannot be called upon to answer any interrogatory which is not founded upon some allegation or charge in the bill. (*Mitford*, 4th *Lond. ed.* 45. 1 *Newl. Prac.* 3d *Lond. ed.* 255.) But it is not necessary that the interrogatory should arise directly out of one of those material averments in the bill upon which the complainants' right to relief essentially depends.

<div style="text-align: right">1832.

Mechanics'
Bank
v.
Levy.</div>

It is sufficient, to entitle him to an answer to the interrogatory, if it is founded upon a statement in the bill which is set up merely as evidence in support of the main charges therein. In framing an ordinary bill in chancery the pleader has a two fold object, discovery and relief. The allegations in the bill, so far as the question of the complainants' right to relief is concerned, are substantially in the same form as the averments in a declaration at law. And the pleader must state his client's cause of action in such a manner that the main facts upon which his right to relief depends may be put in issue and tried. But the complainant, in addition to this, has a right to examine the defendant, on oath, in support of the main charges upon which his claim to the interposition of the court in his favor is based, and also as to any collateral facts which may be material in determining the extent, or kind of relief to which he is entitled, if the main charges in the bill are admitted or proved. He may, therefore, state any matters of evidence in his bill which may be material in establishing the main charge, or in ascertaining the nature or kind of relief proper to be administered ; and may interrogate the defendant as to those matters. In this case some of the main facts, upon which the complainants seek relief against the defendant Wolfe, are, that the money was fraudulently obtained from the bank, and was placed in his hands without consideration, where it remained at the time of the examination before the recorder, when the circumstances of the fraud appeared upon the examination of these defendants on oath. And there can be no doubt, in this case, that if the fact is established that the money was improperly and fraudulently obtained from the complainants' clerks, and that Wolfe had notice of that fact before he parted with the money or paid a valuable consideration therefor, he cannot in equity be permitted to retain the same as against the just claims of the complainants thereon. (*Trademan's Bank* v. *Merritt*, 1 *Paige's Rep.* 302.) The allegations in the bill as to what took place before the recorder are therefore material, not only to show that Wolfe then had notice of the fraud, while the money was still in his hands, but also as evidence in support of the main charge of fraud and collusion, upon which the complainants' claim as against Wolfe mainly rests.

The fourth exception to the answer of Levy, which is the first allowed by the vice chancellor, relates to the amount due the complainants on their judgment. In a case of this kind the 189th rule requires the complainant to state the true sum due on his judgment, over and above all just claims of the defendant by way of set off or otherwise. This allegation in the bill was therefore material; and the defendant probably intended to admit the whole amount of the judgment and the interest thereon to be due, as stated in the bill. But by a slip in the phraseology of the answer the proper admission is not made. I must therefore, though with some hesitation, affirm the decision of the master and the vice chancellor as to this exception.

The fifth exception is for not answering an interrogatory which calls upon Levy to disclose whether the overdrawing at the bank was not voluntary and premeditated. The charges in the bill are that the monies were obtained by overdrawing, and by fraud and collusion between him and Wolfe, his son-in-law; and that it appeared on the examination before the recorder that the overdrawing was voluntary and premeditated. The discovery called for by this exception is material in the establishment of a fraud in obtaining the money from the bank. A wilful and intentional overdrawing, by a person who knew he had not the means of making good his account, might be a gross fraud, considering the manner in which business is done in the banks of our large commercial cities; especially if it should appear that several checks were drawn at the same time and presented separately, or by different individuals, so as to elude the vigilance of the officers of the institution, by giving to such checks the appearance of ordinary business drafts. Whereas if the drawer overdrew by mistake, or under the supposition that he would have funds there to meet the drafts at the time they were presented, or before the bank closed, the transaction would be perfectly fair and honest, if no means were resorted to for the purpose of preventing the officers of the bank from noticing the fact that he had not funds in the bank at the time. This exception was therefore properly allowed.

The sixth exception is founded upon an interrogatory, in the bill, calling upon Levy to disclose whether he delivered the checks, on which the money was obtained, to Wolfe, or to any other person for his use ; and to whom in particular. He says he delivered two of the checks to the clerk of Wolfe, but does not disclose who that clerk was. It may be material to ascertain who that clerk was, not only for the purpose of showing that the complainants' money went directly into the hands of Wolfe, but also to ascertain how much went there. Even if the separate answer of Wolfe could be referred to as an admission that the money came to his hands, it does not remove the difficulty ; as he only admits the receipt of two thousand dollars, and there are no two of the checks corresponding in amount with such admission. The discovery of the particular individual to whom the checks were given may also be very material on other grounds, which it is not necessary here to state. The complainants having distinctly called for a discovery as to the person to whom the checks were given, there is no good reason assigned for withholding his name.

The eighth exception is founded upon an interrogatory calling upon Levy to state whether Wolfe is not now indebted to him ; and if so, in what amount. I have not been able to find any allegation in the bill on which to sustain this interrogatory, to the extent claimed by this exception. Except from the allegation that it appeared on the examination before the recorder that Wolfe was then indebted to Levy, there is nothing on which to found a presumption that he was indebted to him at the time of filing the complainants' bill, or at any time since. And a defect in the charging part of the bill cannot be supplied by a subsequent interrogatory ; which is to be construed by the charging part, and is not to be considered more extensive. The fact of the indebtedness at the time of the examination before the recorder, is admitted by the answer of Levy. But he further states, that subsequently, and before the filing of this bill, he compounded with Wolfe at the rate of twenty five cents on a dollar, and received the amount thus agreed upon, in full satisfaction and discharge of his debt. As there is no suggestion of any subsequent indebtedness by Wolfe to him, I must consider this a perfect an-

swer to every thing that could properly be inquired of, or which he was bound to answer under this interrogatory. This exception cannot therefore be sustained.

The tenth exception is evidently well taken; as the defendant Levy admits, by implication at least, that he has still in his possession a part of the monies received from Wolfe on the compromise with him. The complainants are entitled to a discovery of the nature and amount of all the property and effects of their judgment debtor, as well to sustain and prove the allegation in the bill that he had property to the value of $100 or more, so as to give this court jurisdiction to make a decree in their favor, as to have such property applied to the satisfaction of their debt.

The eleventh exception is not well taken. As there is no allegation or suggestion in the complainants' bill that the purchasers of the notes, or the other Carolina property, did not purchase that property fairly and bona fide, it would not benefit the complainants if Levy should admit that he sold the notes, and his interest in the other property, for less than half their value. Although the court might be satisfied that he parted with the property in that manner for the purpose of defrauding his creditors, yet, if the vendees purchased it in good faith, their title cannot be disturbed. And the establishment of the fraud against Levy would not make him liable to the complainants beyond the amount of their debt, for which he is liable in any event. If there had been any allegation in the bill, suggesting a fraudulent agreement between him and Wolfe to overdraw the bank, and then to sell off his property and to put the proceeds in the hands of the latter to keep it out of the reach of legal process, it might have presented a different question.

The permission to the complainants to amend their bill was a matter of course, under the 45th and 190th rules, upon the allowance of any of the exceptions for insufficiency. A majority of the exceptions to the answer of Levy not having been finally allowed, the complainants are only entitled to the costs of the original exceptions which were allowed. And neither party is to have any costs upon the reference, or upon the hear-

ing before the vice chancellor, or upon this appeal. The order of the vice chancellor is to be modified accordingly.

The second exception to the answer of Wolfe is founded upon the neglect of this defendant to state in his answer whether he was the son-in-law of his co-defendant Levy. The fact of relationship is not material to the relief sought by this bill against either of the defendants. But I agree with the vice chancellor that, in connection with the facts charged, it might not be unimportant as a circumstance to sustain the charge of fraud. The difficulty, however, in sustaining this exception is, that the relationship is stated in the bill by way of recital merely, and not as a positive allegation. And there is no interrogatory calling upon the defendant to answer as to his relationship to Levy. Although a mere recital of a fact may perhaps be sufficient to justify an interrogatory calling upon the defendant to answer as to that fact, so that it may be used as evidence, yet I do not think he was called upon in this case without such an interrogatory, to admit or deny the fact recited. This exception should therefore have been disallowed. (*See Albretcht* v. *Sussmann,* 2 *Ves. & Bea.* 323.)

The matters of the third and fourth exceptions, to the answer of this defendant, appear to be very material to the establishment of the complainants' claims against him, for the monies alleged to have been obtained from their bank by fraud and collusion. The defendant is particularly interrogated as to the matters of these exceptions ; and the particular sums of money received by him from Levy, and the precise time at which each particular sum was received by him, appear to be material when taken in connection with other facts in the case. He must also answer, not only as to his knowledge of the fact of the money having been overdrawn from the bank, but as to his understanding, belief and reasons for supposing that the money had been thus obtained, and as to the time when that information was first received by him. These two exceptions were therefore properly allowed.

The fifth exception calls upon this defendant to answer whether he admitted, when under oath before the recorder, that he had received the sum of $4300 of Levy, with a knowledge that the same had been overdrawn from the complainants'

bank. By the preceding exception, the defendant was called upon to answer as to the fact of his knowledge of the overdrawing at the time he received the money from Levy. If, in answering that exception, he admits he had such knowledge, it cannot be material for the complainants to show that he made a similar admission on his examination before the recorder. On the contrary, if he denies that he had such knowledge, the complainants cannot compel him to answer whether he swore differently on the occasion alluded to ; as that might subject him to a prosecution for perjury. The complainants must therefore confine themselves to the answer to the main fact ; and this exception must be overruled, as one which the defendant may not answer with safety to himself. As the money was still in his hands at the time of his examination before the recorder, if he was then informed that it had been obtained from the bank, by Levy, illegally and improperly, it is perhaps not very material to inquire whether he had any previous knowledge of the fact ; as he could not afterwards pay it over to Levy, so as to deprive the complainants of their rights as against himself.

The sixth exception calls upon Wolfe to disclose what disposition was made of the money received by him from Levy, and what has become of that part of it which remained in his hands at the time of his examination before the recorder. This exception is evidently well taken ; as the complainants are entitled to follow their money, so long as it can be traced and identified, into the hands of any person who has not actually received it for a valuable consideration without notice of their rights.

The order of the vice chancellor, which is appealed from by this defendant, must therefore be modified so as to conform to this decision. And as a majority of the exceptions to this answer are not allowed, the complainants are not entitled to the costs of the reference. And neither party is to have costs as against the other upon the exceptions taken to the master's report, or upon the hearing before the vice chancellor, or upon this appeal.